**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION**

RECEIVED
CLERK'S OFFICE
Date: _10/25/04_
U.S. DISTRICT COURT
MIDDLE DIST. OF GEORGIA
ALBANY, GEORGIA

UNITED STATES OF AMERICA, ex. rel.,　　　　)
CHARLES REHBERG and JOHN BAGNATO, M.D.　)
　　　　　　　　　　　　　　　　　　　　　　　)
　　　　Relators/Quitam Plaintiffs,　　　　　　)
　　　　　　　　　　　　　　　　　　　　　　　)
vs.　　　　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　　　)
PHOEBE PUTNEY HEALTH SYSTEMS, INC.;　　)
PHOEBE PUTNEY MEMORIAL HOSPITAL, INC.;　)
JOHN DOES 1 THROUGH 100,　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　　　)
　　　　Defendants.　　　　　　　　　　　　　)
_____ )

Civil Action No.:

/:04-CV-162 (WLS)

**TO BE FILED IN CAMERA
AND UNDER SEAL**

## QUITAM RELATOR COMPLAINT UNDER 31 U.S.C. § 3729,
## FEDERAL FALSE CLAIMS ACT

Come Now Relators, Charles Rehberg and John Bagnato, M.D., by and through

their counsel of record, and for this cause of action against the Defendants Phoebe Putney

Health Systems, Inc. and Phoebe Putney Memorial Hospital, Inc. (collectively referred to

as "Phoebe") state to the Court as follows:

1.

This is an action to recover damages and civil penalties on behalf of the United

States of America arising out of the false claims presented for payment by Phoebe under

the Federal Medicare Program. This action arises under the provisions of Title 31 U.S.C.

§ 3729, *et seq*, popularly known as the False Claims Act which provides that the United

States District Courts shall have exclusive jurisdiction of actions brought under that Act.

2.

Section 3732(a) of the Act provides that "Any action under section 3730 may be

brought in any judicial district in which the defendant or, in the case of multiple defendants, any one defendant can be found, resides, transacts business, or in which any act proscribed by section 3729 occurred."

3.

The Court has subject matter jurisdiction in entertain this action under 28 U.S.C. §§ 1331 and 1345. The Court may exercise personal jurisdiction over the Defendants pursuant to 31 U.S.C. §3732(a) because at least one of the defendants resides or transacts business in the Middle District of Georgia.

4.

Venue is proper in the Middle District of Georgia under 31 U.S.C. §3732 and 28 U.S.C. § 1391(b) and (c) because Defendants reside or transact business in that District.

5.

Relator John Bagnato, MD, is a surgeon and resident of Albany, Georgia, and is a physician and surgeon practicing at defendant hospital. Dr. Bagnato has consistently attempted to induce Phoebe Putney to institute corporate safeguards regarding conflicts of interests at the institution, and has been active and vocal in opposing policies, procedures, and practices that he believes are contrary to good medicine and against the best interests of his patients.

Relator Charles Rehberg is a certified public account, certified forensic accountant, and has experience both auditing hospitals for compliance with Medicare statutory and regulatory compliance as well as working as a Chief Financial Officer for rural community hospitals in Georgia. Relators are well known in the community, particularly among physicians, health care workers, and employees of Phoebe Putney

2

Hospital, as individuals who oppose fraudulent and corrupt practices in health care.

6.

### The False Claim Act

The False Clams Act ("FCA") provides in pertinent part:

> (a) Any person who (1) knowingly presents or causes to be presented, to an officer or employee of the United States Government or a member of the Armed Force of the United States a false or fraudulent claim for payment or approval; (2) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government; (3) conspires to defraud the Government by getting a false or fraudulent claim paid or approved by the Government; . . or (7) knowingly makes, uses, or caused to be made or used a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Government,
>
> * * *
>
> is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages which the Government sustains because of the act of that person . . .
>
> (b) For purposes of this section, the terms "knowing" and "knowingly" mean that a person, with respect to information (1) has actual knowledge of the information; (2) acts in deliberate ignorance of the truth or falsity of the information; or (3) acts in reckless disregard of the truth or falsity of the information, and no proof of specific intent to defraud is required.

31 U.S.C. § 3729.

7.

### The Medicare Program

In 1965, Congress enacted Title XVIII of the Social Security Act, known as the

Medicare Program, to pay for the costs of certain healthcare services. Entitlement to

Medicare is barred on age, disability or affliction with end-stage renal diseases. *See* 42

3

U.S.C. §§ 426, 426A. Part A of the Medicare Program authorizes payment for institutional care, including hospital, skilled nursing facility and home health care. *See* 42 U.S.C. §§ 1395c-1395i-4. Most hospitals including Phoebe derive a substantial portion of their revenue from the Medicare Program.

8.

HHS is responsible for the administration and supervision of the Medicare Program. CMS is an agency of HHS and is directly responsible for the administration of the Medicare Program.

9.

Under the Medicare Program, CMS makes payments retrospectively (after the services are rendered) to hospitals for inpatient services. Medicare enters into provider agreements with hospitals in order to establish the hospitals' eligibility for participating in the Medicare Program. However, Medicare does not prospectively contract with hospitals to provide particular services for particular patients. Any benefits derived from those services are derived solely by the patients and not by Medicare or the United States.

10.

As detailed below, Phoebe submitted claims both for specific services provided to individual beneficiaries and claims for general and administrative costs incurred in treating Medicare beneficiaries.

11.

To assist in the administration of Medicare Part A, CMS contracts with "fiscal intermediaries." 42 U.S.C. §1395h. Fiscal immediacies, typically insurance companies, are responsible for processing and paying claims and auditing cost reports. At all times

4

relevant herein, the fiscal intermediary to which Phoebe submitted Medicare claims was Blue Cross Blue Shield of Georgia.

12.

Upon discharge of Medicare beneficiaries from a hospital, the hospital submits claims for interim reimbursement for items and services delivered to those beneficiaries during their hospital stays. 42 C.F.R. §§ 413.1, 413.60, 413.64. Hospitals submit patient-specific claims for interim payments electronically on a CMS From UB-92 (formerly called a HCFA Form UB-92).

13.

As a prerequisite to payment by Medicare, CMS requires hospitals to submit annually form CMS-2552 (formerly called a HCFA-2552), more commonly known as the Hospital Cost Report. Cost Reports are the final claim that a provider submits to the fiscal intermediary for items and services rendered to Medicare beneficiaries.

14.

After the end of each hospital's fiscal year, the hospital files its Hospital Cost Report with the fiscal intermediary, stating the amount of reimbursement the provider believe it is due for the year. *See* 42 U.S.C. §1395g(a); 42 C.F.R. §413.20. *See also* C.F.R. § 405.1801(b)(1). Hence, Medicare relies upon the Hospital Cost Report to determine whether the provider is entitled to more reimbursement than already received through interim payments, or whether the provider has been overpaid and must reimburse Medicare. 42 C.F.R. §§ 405.1803, 413.50 and 413.64(f)(i).

15.

Medicare payments for inpatient hospital services are determined by the claims

5

submitted by the provider for particular patient discharges (specifically listed on UB-92s) during the course of the fiscal year. On the Hospital Cost Report, the Medicare liability for inpatient services is then totaled with any other Medicare liabilities to the provider. This total determines Medicare's liability for services rendered to Medicare beneficiaries during the course of a fiscal year. From this sum, the payments made to the provider during the year are subtracted to determine the amount due to the Medicare Program or the amount due to the provider.

16.

Under the rules applicable at all times relevant to this complaint, Medicare, through its fiscal intermediaries, had the right to audit the Hospital Cost Reports and financial representations made by PHOEBE to ensure their accuracy and preserve the integrity of the Medicare Trust Funds. That right includes the right to make retroactive adjustments to Hospital Cost Reports previously submitted by a provider if any overpayments have been made. 42 C.F.R. §413.64(f).

17.

Every Hospital Cost Report contains a "Certification" that must be signed by the chief administrator of the provider or a responsible designee of the administrator.

18.

At all times relevant to this Complaint, the responsible provider official was required to certify, in pertinent part:

> to the best of my knowledge and belief, it (the Hospital Cost Report) is a true, correct and complete statement prepared from the books and records of the provider in accordance with applicable instructions, except as noted.

> I further certify that I am familiar with the laws and regulations

6

regarding the provision of health care services, and that the services
identified in this cost report were provided in compliance with such
laws and regulations.

Form HCFA-2552-92.

19.

In or about 1996, the Hospital Cost Report was revised to include the following

notice:

Misrepresentations or falsification of any information contained in
this cost report may be punishable by criminal, civil and
administrative action, fine and/or imprisonment under federal law.
Furthermore, if services identified in this report were provided or
procured through the payment directly or indirectly of a kickback or
where otherwise illegal, criminal, civil and administrative action,
fines and/or imprisonment may result.

20.

Phoebe is and was at all relevant times familiar with the laws and regulations

governing the Medicare Program, including requirements relating to the completion of

cost reports.

21.

A hospital is required to disclose all known errors and omissions in its claims for

Medicare reimbursement (including its cost reports) to its fiscal intermediary. 42 U.S.C.

§ 1320a-7b(a)(3) specifically creates a duty to disclose known errors in cost reports:

Whoever . . . having knowledge of the occurrence of any event
affecting (A) his initial or continued right to any such benefit or
payment . . . conceals or fails to disclose such event with an intent
fraudulently to secure such benefit or payment either in a greater
amount or quantity than is due or when no such benefit or payment is
authorized . . . shall in the case of such a  . . . concealment or failure .
. . be guilty of a felony.

22.

Hospital Cost Reports submitted by Phoebe were, at all times relevant to this Complaint, signed by Phoebe employees who attested, among other things, to the certification quoted above.

23.

**The Medicaid Program**

Medicaid is a joint federal-state program that provides health care benefits for certain groups, primarily this poor and disabled. The federal government provides matching funds and ensures that states comply with minimum standards in the administration of the program.

24.

The federal Medicaid statute sets forth the minimum requirements for state Medicaid programs to qualify for federal funding, which is called federal financial participation ("FPF"), 42 U.S.C. §§ 1396, *et seq.*

25.

Each state's Medicaid program must cover hospital services. 42 U.S.C. §1396a(10)(A), 42 U.S.C. § 1396d(a)(1)-(2).

26.

Georgia provider hospitals participating in the Medicaid program file annual cost reports with the state's Medicaid fiscal intermediary, in a protocol similar to that governing the submission of Medicare cost reports. Provider hospitals participating in the Medicaid program file a copy of their Medicare cost reports with the Medicaid program, which is then used by Medicaid or its intermediaries to calculate Medicaid reimbursement.

8

27.

At all material times, the Medicaid Program was administered in the State of Georgia by the Office of the Governor, State of Georgia, Medicaid Division ("Georgia Medicaid"), which contracted with _____ to serve as paying agent to receive, adjudicate, and pay Medicaid claims submitted by Medicaid participating providers in the State of Georgia. Providers incorporate the same type of financial data in their Medicare cost reports as contained in their Medicaid cost reports, and include data concerning the number of Medicaid patient days at a given facility.

28.

The Georgia Medicaid program uses the Medicaid patient data in the cost report to determine the reimbursement to which the facility is entitled. The facility receives a proportion of its costs equal to the proportion of Medicaid patients in the facility.

29.

Where a provider submits the Medicare cost report with false or incorrect data or information to Medicaid, this necessarily causes the submission of false or incorrect data or information to the state Medicaid program, and the false certification on the Medicare cost report necessarily causes a false certification to Medicaid as well.

30.

Phoebe sought reimbursement from the Georgia Medicaid program for the time period pertinent to this Complaint.

31.

Most health care providers which have entered into provider agreements with the Secretary, as has the Hospital, are reimbursed through the Prospective Payment System

9

(PPS). This system reimburses hospitals not for their actual incurred costs but for costs based on prospectively fixed rates for each category of treatment.

32.

Hospitals receive payment for the services they perform on Medicare beneficiaries based upon the "diagnosis related group" (DRG) within which the service falls. 42 C.F.R. § 412.60 (2001). The payment rates for the upcoming federal fiscal year (FFY) for each DRG are published in the Federal Register, first in the form of a proposed rule and then in the form of a final rule published on or about August 1 for the FFY beginning on October 1 of that year. 42 U.S.C. § 1395ww(d)(6); 42 C.F.R. §412.8. This system notifies hospitals in advance of the amount of payment they should expect to receive per patient for each DRG.

33.

In order to account for wide variations in the cost of labor across the country, the amount of a hospital's payment under the PPS will vary depending on its location. First, hospitals are assigned a standardized rate based on whether they are located in a country in a "large urban," urban," or "rural" area. *See Athens Cmty. Hosp., Inc. v. Shalala,* 305 U.S. App. D.C. 428, 21 F.3d 1176, 1177 (D.C. Cir. 1994). A wage area in a "large urban" or "urban" location is known as a Metropolitan Statistical Area (MSA). After calculating the standardized rate based on the area, the hospital's payment rates are computed by adjusting the standardized amount by a "wage index" to account for area wage differences. 42 U.S.C. § 1395ww(d)(3)(E).

34.

The wage index is updated each year based on hourly wage data collected from

the hospitals. Each hospital provides the Secretary with date including the total salaries paid to and hours worked by its employees. §1395ww(d)(3)(E). The Secretary computes the average hourly wage for a labor market area by adding the total of the salaries and fringe benefits paid by the hospitals within that area, and dividing that figures by the total number of hours worked. Changes to the Hospital Inpatient Prospective Payment Systems and Fiscal Year 2001 Rates, 65 Fed. Reg. 47,054, 47,074-76 (Aug. 1, 2000) (to be codified at 42 C.F.R. pts 410, 412, 413 & 485).

35.

The Secretary uses this data to create the wage index for each geographic area. The wage index compares the average hourly wage for hospitals in a given geographic area with the national average hourly wage, which in turn determines the payment rate above or below the national average at which a hospital is reimbursed. The wage index for an area generally applies to all hospitals physically located within that geographic area.

36.

Thus, the wage index has a significant effect on the amount of reimbursement a hospital receives.

37.

Medicare statutes contain a complex formula for calculating prospective payment rates. The rates are derived by first calculating the average Medicare allowable costs per discharge during a base year, adjusted for inflation, for each hospital participating in the Medicare program. 42 U.S.C. §1395ww(d)(2)(A)(B). Adjusted averages for each hospital are then "standardized" to remove the effects of factors including indirect

11

medical costs, wage variations, and "case mix" (that is, the relative complexity and costlines of each hospital's cases). 42 U.S.C. §1395ww(d)(2)(C).

38.

A hospital's payment under PPS varies in part based on its geographic classification, in particular on whether the hospital is located or deemed to be located within an urban or rural area. 42 U.S.C. §1395ww(d)(2)(D). An urban area is defined as a Metropolitan Statistical Area ("MSA") or certain other specified localities. 42 U.S.C. §1395ww(d)(2)(D); 42 C.F.R. §412.62(f). Any other area is defined as a rural area. *Id.* The statute requires the Secretary to compute a separate average of hospital "standardized amounts" for rural and urban areas. 42 U.S.C. §1395ww(d)(2)(D). In addition, in making payments to particular hospitals, actual PPS payment rates for each DRG are computed by adjusting the appropriate standardized amount by a "wage index" to account for area wage differences. The wage index which reflects the relative level of wages and salaries for hospital workers in the area where the hospital is located compared to the national average hospital wage level 42 U.S.C. §1395ww(d)(3)(E).

39.

The Secretary determines a separate wage index for each MSA in the United States, and one wage index per state for rural counties and towns not located in an MSA. The wage index used to adjust Medicare inpatient service payments for an individual hospital is the wage index that the Secretary determines and assigns to the area in which the hospital is physically located. The Secretary recalculates and revises the wage indices annually. This wage index is intended to compensate for regional differences in the costs

12

of providing services of §1895ww(d)(3)(E); 42 C.F.R. Part 412.62. Generally, under PPS urban hospitals receive a higher reimbursement than rural hospitals.

40.

Under PPS, Medicare authorities first construct a standard nationwide cost rate— the "federal rate" – based on the average operating costs of inpatient hospital services. *See* 49 Fed. Reg. 234, 251 (Jan. 3, 1984). They then assign a weight to each category of inpatient treatment, or "diagnosis-related group" ("DRG"). Finally, they calculate a "wage index" to adjust reimbursement rates to reflect regional variations in hospital wage costs. For each patient discharge, a hospital's final reimbursement is calculated by taking the federal rate, adjusting it for wage variations, and multiplying it by the weight assigned to the patient's DRG. *See generally* 42 U.S.C. §1395ww(d)(2)(1988).

41.

The wage index reflects a requirement in the 1983 Amendments that the federal rate be adjusted to reflect geographic variations in labor costs. *See* 42 U.S.C. §1395ww(d)(2)(H). The area wage indexes for each region are based on wage-cost data periodically submitted by Medicare hospitals across the country. The indexes are used at two points in the prospective payment rate calculation. First, regional wage indexes are used (along with other factors, such as inflation and hospital case-mix ratios) to modify and standardize the data used to establish the nationwide "federal rate." *See* 42 U.S.C. §1395ww(d)(2)(H). Because each wage index is used to develop the base national rate as well as to adjust that rate by region, a change in any single wage index can affect the reimbursement rate of each hospital in the country.

42.

Using a complex formula, the Secretary computes the PPS payment rate for a particular provider on the basis of information in a wage index. The wage index reflects "the relative hospital wage level in the geographic area of the hospital compared to the national average hospital wage level." 42 U.S.C. §1395ww(d)(2)(H). The wage index for a hospital is calculated by dividing "the average hourly wage paid by hospitals in that area by the national average hourly hospital wage." Once calculated, the wage index is used to help determine the amount of reimbursement that each provider is entitled to receive under the PPS. Under this formula, the higher the wage index for the area in which the hospital is located, the more reimbursement the hospital will receive per discharge.

43.

The data used to calculate the wage index is collected directly from the providers by means of a "hospital wage survey" which is conducted by the Health Care Financing Administration ("HCFA"). Every year, the HCFA updates the data that it collects from the providers on the basis of the information in Worksheet S-3, Part II of the provider's cost reports. 42 U.S.C. §1395ww(d)(3)(E). Based on the substantial amount of time that is needed for the provider to compile and submit the cost reports, and for the intermediary to then review these reports, there is generally a four year lag between the date upon which the provider reports the wage data and the date when the wage index is published.

44.

The Office of Inspector General released its work plan for FY 2005 which raises

14

concerns about the accuracy of hospital wage data.  Below is a excerpt from the plan

related to their perceived review data reporting for wage indexes.

### Inpatient Prospective Payment System Wage Indices

We will determine whether hospital and Medicare controls are adequate
to ensure the accuracy of the hospital wage data used for calculating
wage indices for the inpatient prospective payment system.  We believe
that the wage indices are vulnerable to inaccuracy because the data used
to calculate them for many metropolitan statistical areas are significantly
influenced by information reported by a single hospital.  Consequently, a
hospital that reports incorrect wage data through its Medicare cost report
could receive incorrect DRG reimbursement.  We will determine the
effect on the Medicare program in terms of incorrect DRG
reimbursement.
*(OAS; W-00-04-35100; various reviews; expected issue date:  FY 2005;
work in progress)*

This case confirms the concerns of the Inspector General.

45.

In late August of 2004, Relators received correspondence from an anonymous

employee of Phoebe which urged Relator to "look at the Medicare Wage Index" for

Phoebe and stated that Phoebe has filed "fraudulent Medicare Cost Reports and reaped

$10's of millions in the last 4-5 years from it."  That correspondence stated:

Mr. Rehberg,
I have watched and admired your willingness to put yourself on the line
against Phoebe Putney.  I work here and know it to be a very unethical
place.  This place has been grossly mismanaged, especially since Kerry
Loudermilk has been here.  Ed Ollie would have never advocated the
type of behavior that he exemplifies.  He is without a doubt the worst
manager that I've ever worked for.  Anyway . . . enough about him . . .
you are very much in the process of uncovering his shady dealings.

A couple of points to ponder.  Why have we not filed our fiscal year
ending 07/31/03 Form 990?  I promise, that when we do, it will look
much different than the FY02 report.  There will be  no addresses for
Board members on it, for example.  Instead of full disclosure, there will
be minimal disclosure . . . at Kerry's instruction.

Also, why don't you take a look at the Medicare Wage Index for the
Albany MSA, composed primarily, of course, of PPMH wages. It's the
highest in the state and there is a reason, and senior management knows
it. We have filed fraudulent Medicare Cost Reports and reaped $10's of
millions in the last 4-5 years from it.

If you will look at the 990's you'll recognize that they have transferred
$10's of millions of investments from PPMH (in the public's eye) to
PPHS (not for the public). This was a mere note to the financial
statements.

We have been instructed to set our pricing at levels to maximize medicare
outlier payments (see Tenet Health Systems).

You've only begun to peel back the onion. I wish that I could publically
support you, but, I need my job!

There are, however, some upper management personnel that recently left
our employment that may be willing to talk to you. If you'll do some
investigation, you can quickly figure out who recently left the Finance
Division.

A copy of this anonymous correspondence is attached to this Complaint as Exhibit "A."

46.

A review of Phoebe's Medicare Cost Reports confirms a dramatic and incredible

rise in the wage index reported by Phoebe. The rise in the Albany wage index from

.7975 in 1999 to 1.0372 in 2000 represents a 30 percent increase in the wage index and a

21.3 percent increase in the DRG payment rate for Phoebe. Between 1999 and 2000

when the increase occurred, DRG payments, including outlier payments, to Phoebe

increased from approximately $35.1 million to approximately $43.1 million. The

compounding effect on add-on payments caused all Medicare inpatient payments to

Phoebe to increase from approximately $50.0 million to approximately $62.3 million in

one year.

47.

Dougherty and Lee County, Georgia compose an MSA which includes the City of

Albany and only two hospitals, Phoebe Putney Memorial Hospital and Palmyra Medical

Center. Below is a table of hourly wages reported over the past nine years in the Federal

Register, including the weighted average and the weight of Phoebe in the calculation.

Table I

| Federal Fiscal Year | Phoebe | Palmyra | Weighted Average | Wage Index | Phoebe Weight[1] |
|---|---|---|---|---|---|
| 1997 | 16.31 | 18.52 | 16.8101 | .8597 | 77.37% |
| 1998 | 15.29 | 18.54 | 15.9028 | .7914 | 81.14% |
| 1999 | 16.12 | 18.39 | 16.5708 | .7993 | 80.14% |
| 2000 | 23.4976 | 18.2016 | 21.9678 | 1.0372 | 71.11% |
| 2001 | 21.9505 | 20.4202 | 21.6247 | .9933 | 78.71% |
| 2002 | 25.2523 | 18.6637 | 23.7363 | 1.0640 | 76.99% |
| 2003 | 25.9135 | 20.1183 | 24.6091 | 1.0594 | 77.49% |
| 2004 | 28.2025 | 21.9411 | 26.8394 | 1.0819 | 78.23% |
| 2005 | 30.7430 | 25.5461 | 29.7283 | 1.1277 | 80.47% |

[1] Calculated based on the reported weighted average.

Because of Phoebe's size relative to Palmyra, Phoebe has a significant influence,

generally between 77 and 80 percent, on the wage index for the Albany, GA MSA.

Between 1998 and 2005, Phoebe's reported hourly wage rate approximately doubled.

This occurred despite the fact that according to data from the Georgia Department of

Labor, average wages in Dougherty County and Albany are consistently ranked below

comparable counties, metropolitan statistical areas, and the state-wide average.

48.

The change in the wage index reported by Phoebe has resulted in massive

increases in federal payments. Based on the 2003 Cost Report submitted by Phoebe and

after considering add-on payments for Indirect Medical Education and Disproportionate

Share, the economic impact of each change in the wage index of .01 was approximately

$603,541 in payments to Phoebe. For outpatient reimbursements, the economic impact

of each change in the wage index of .01 was approximately $110,927.00 in payments to

Phoebe.

## FIRST CAUSE OF ACTION

**False Claims Act; Presentation of False Claims 31 U.S.C. § 3729(a)(1)**

49.

Plaintiffs repeat and reallege Paragraphs 1 through 48 as if fully set forth herein.

50.

Phoebe falsely manipulated its wage index data and knowingly presented or

caused to be presented false or fraudulent claims for payment or approval to the United

States.

51.

By virtue of the false or fraudulent claims made by Phoebe, the United States

suffered damages and therefore is entitled to multiple damages under the False Claims

Act, to be determined at trial, plus a civil penalty of $5,000 to $10,000 for each violation.

52.

By virtue of the false or fraudulent claims made by Phoebe, the United States

suffered damages and therefore is entitled to treble damages under the False Claims Act,

to be determined at trial, plus a civil penalty of $5,000 to $10,000 for each violation.

## SECOND CAUSE OF ACTION

### False Claims Act: Making Or Using False Record Or Statement
### To Cause Claim to be Paid
### (31 U.S.C. §3729(a)(2))

53.

Plaintiffs repeat and reallege Paragraphs 1 through 52 as if fully set forth herein.

54.

Phoebe knowingly made, used, or caused to be made or used false records or

statements – i.e., the false certification and representations made or caused to be made by

Phoebe when initially submitting the false claims for interim payments and the false

certifications made or caused to be made by Phoebe in submitting the cost reports – to get

false and fraudulent claims paid or approved by the United States.

55.

By virtue of the false records or false statements made by Phoebe, the United

States suffered damages and therefore is entitled to treble damages under the False

Claims Act, to be determined at trial, plus a civil penalty of $5,000 to $10,000 for each

violation.

## THIRD CAUSE OF ACTION

### False Claims Act; Conspiring to Submit False Claims
### (31 U.S.C. §3729(a)(3))

56.

Plaintiffs repeat and reallege Paragraphs 1 through 55 as though fully set forth

herein.

57.

Phoebe and the John Doe Defendants conspired to defraud the United States by

submitting false or fraudulent claims for reimbursement from the United States for monies to which they were not entitled, in violation of 31 U.S.C. § 3729(a)(3). As part of schemes and agreements to obtain reimbursements from the United States in violation of federal laws, these Defendants conspired together to receive illegal remunerations based on false wage index data.

58.

By virtue of Defendants' conspiracy to defraud the United States, the United States suffered damages and therefore is entitled to treble damages under the False Claims Act, to be determined at trial, plus a civil penalty of $5,000 to $10,000 for each violation.

## FOURTH CAUSE OF ACTION

### Payment By Mistake of Fact

59.

Plaintiffs repeat and reallege Paragraphs 1 through 58 as though fully set forth herein.

60.

This is a claim for the recovery of monies paid by the United States to Phoebe as a result of mistaken understandings of fact.

61.

The false claims which Phoebe submitted to the United States' agents were paid by the United States based upon mistaken or erroneous understandings of material fact.

62.

The United States, acting in reasonable reliance on the truthfulness of the claims

and the truthfulness of Defendants' certifications and representations, paid Phoebe certain sums of money to which they were not entitled, and Defendants are thus liable to account and pay such amounts, which are to be determined at trial, to the United States.

### FIFTH CAUSE OF ACTION

#### Unjust Enrichment

63.

Plaintiffs repeat and reallege Paragraphs 1 through 62 as if fully set forth herein.

64.

This is a claim for the recovery of monies by which Phoebe has been unjustly enriched.

65.

By directly or indirectly obtaining Government funds to which they were not entitled, Phoebe was unjustly enriched, and are liable to account and pay with amounts, or the proceeds therefrom, which are to be determined at trial, to the United States.

### SIXTH CAUSE OF ACTION

#### Disgorgement Of Illegal Profit, For Imposition Of A Constructive Trust And An Accounting

66.

Plaintiffs repeat and reallege Paragraphs 1 through 65 as if fully set forth herein.

67.

This is a claim for disgorgement of profits received by Phoebe because of illegal payments obtained by Phoebe under false and fraudulent wage index data submitted by Phoebe.

21

68.

Phoebe concealed its illegal activity through false statements, claims and records, and failed to abide by their duty to disclose such information to the United States.

69.

The United States did not detect Phoebe's illegal conduct.

70.

This Court has the equitable power to, among other things, order Phoebe to disgorge the entire profit they earned from business generated as a result of their violations of the False Claims Act.

## SEVENTH CAUSE OF ACTION

### Recoupment of Overpayments

71.

Plaintiffs repeat and reallege Paragraphs 1 through 70 as if fully set forth herein.

72.

This is a claim for recoupment for the recovery of monies unlawfully paid by the United States to Phoebe contrary to statute or regulation.

73.

The United States paid Phoebe certain sums of money to which they were not entitled, and Defendants are thus liable under the law of recoupment to account and return such amounts, which are to be determined at trial, to the United States.

## EIGHTH CAUSE OF ACTION

### Common Law Fraud

74.

Plaintiffs repeat and reallege Paragraphs 1 through 73 as if fully set forth herein.

75.

Phoebe made material and false representations in their initial requests for interim payments and in their cost reports with knowledge of their falsity or reckless disregard for their truth, with the intention that the United States act upon the misrepresentations to its detriment. The United States acted in justifiable reliance upon Phoebe's misrepresentations by making interim payments on the false claims and then by settling the cost reports at inflated amounts.

76.

Had the true facts been known to the United States, Phoebe would not have received the interim payments or the inflated amounts on the cost reports.

77.

By reason of these interim payments and the inflated amounts on the cost reports, the United States has been damaged in as yet undetermined amount.

## NINTH CAUSE OF ACTION

### Violation of 31 USC § 3729(a)(7) Reverse False Claims

78.

Plaintiffs repeat and reallege Paragraphs 1 through 77 as if fully set forth herein.

79.

Defendants have been knowingly and consciously manipulating the wage index

data by inflating that data in order to obtain greater reimbursement.

80.

Defendants have consistently created false records or statements, in the form of cost reports and other documentation, to support its claim for current changes in the wage index and to avoid disclosing its fraud in the changes that have occurred since at least 2000.

81.

Defendants are aware that they have been overpaid on Medicare and Medicaid admissions since at least 2000 and that they are obligated to repay those overpayments to the federal government.

82.

Defendants have continued to create false records in order to avoid, conceal, decrease, or diminish its obligation to repay the Medicare program for wrongful payments based on the inflated wage index.

83.

As such it is liable to the government for three times the amount of the over-payments.

84.

Defendants are also liable for a civil penalty attaching to all claims for reimbursement made between 1997 and 2004 in an amount no less than $5,500 nor more than $11,000 per claim.

24

## PRAYERS FOR RELIEF

85.

WHEREFORE, Plaintiffs demand and pray that judgment be entered in their

favor against Defendants, jointly and severally, as follows:

86.

On the First, Second, Third, and Ninth Causes of Action under the False Claims

Act, for the amount of the United States' damages, trebled as required by law, and such

civil penalties as are required by law, for a qui tam relators share as specified by 31 USC

§ 3730, for attorneys fees, costs and expenses as provided by 31 USC § 3730, and for all

such further relief as may be just and proper.

87.

On the Fourth, Fifth and Seventh Causes of Action, for payment by mistake,

unjust enrichment, and recoupment, for the damages sustained and/or amounts by which

the Defendants were unjustly enriched or by which Defendants retained illegally obtained

monies, plus interest, costs, and expenses, and all such further relief as may be just and

proper, and for a qui tam relators share as an alternative remedy as specified by 31 USC §

3730, for attorneys fees, costs and expenses as provided by 31 USC § 3730, and for all

such further relief as may be just and proper.

88.

On the Sixth Cause of Action for disgorgement of illegal profits, for an

accounting of all revenues unlawfully obtained by Defendants, the imposition of a

constructive trust upon such revenues, and the disgorgement of the illegal profits

obtained by Defendants and for a qui tam relators share as an alternative remedy as

specified by 31 USC § 3730, for attorneys fees, costs and expenses as provided by 31

USC § 3730, and for all such further and equitable relief as may be just and proper.

89.

On the Eighth Cause of Action for common law fraud, for compensatory and

punitive damages in an amount to be determined, together with costs and interest, and for

a qui tam relators share as an alternative remedy as specified by 31 USC § 3730, for

attorneys fees, costs and expenses as provided by 31 USC § 3730, and for all such further

relief as may be just and proper.

**JURY TRIAL IS HEREBY DEMANDED.**

Respectfully submitted, this the 25th day of October, 2004.

**VROON & CRONGEYER, LLP**

BY: _____
    Bryan A. Vroon
    Georgia Bar No. 729086

BY: _____
    John W. Crongeyer
    Georgia Bar No. 197267

1230 Peachtree Street, Suite 2450
Atlanta, Georgia  30309
Telephone: (404) 607-6710
Facsimile:  (404) 607-6711

Richard F. Scruggs
Mississippi Bar No. 6582
Sidney A. Backstrom
Mississippi Bar No. 99890
Zach Scruggs
Mississippi Bar No. 100011
**SCRUGGS LAWS FIRM**
120-A Courthouse Square
P.O. Box 1136
Oxford, MS 38655
Telephone: (662)281-1212
Facsimile: (662)281-1312

Edward D. Robertson, Jr.
Missouri Bar No. 27183
Anthony L. DeWitt
Missouri Bar No. 41612
Bartimus, Frickleton, Robertson & Obetz, PC
715 Swifts Highway
Jefferson City, MO 65109
Telephone: (573) 659-4454
Facsimile: (573) 659-4460

(Petitions for Pro Hac Vice Admission To Be Filed)

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, ex. rel., ) <br> CHARLES REHBERG and JOHN BAGNATO, M.D. ) <br> ) <br>     Relators/Quitam Plaintiffs, ) <br> ) <br> vs. ) <br> ) <br> PHOEBE PUTNEY HEALTH SYSTEMS, INC.; ) <br> PHOEBE PUTNEY MEMORIAL HOSPITAL, INC.; ) <br> JOHN DOES 1 THROUGH 100, ) <br> ) <br>     Defendants. ) <br> _____ ) | Civil Action No.: <br><br> **TO BE FILED IN CAMERA AND UNDER SEAL** |

## CERTIFICATE OF SERVICE

This is to certify that I have this day served a copy of the within and foregoing

**Memorandum for Clerk Regarding the Filing of Quitam Relator Complaint Under**

**31 U.S.C. §3729 Federal False Claims Act** by depositing a true and correct copy of

same in the United States Mail, postage prepaid, addressed as follows:

> Honorable John Ashcroft, Esq.
> Attorney General of the United States
> 5111 Main Justice Building
> 10th & Constitution Avenue, N.W.
> Washington, D.C. 20210
>
> Honorable Maxwell Wood
> U.S. Attorney General for the Middle District of Georgia
> 433 Cherry Street
> Thomas Jefferson Building
> Macon, GA 31201

This ___25th___ day of October, 2004.

_____
Bryan A. Vroon

Mr. Rehberg,

I have watched and admired your willingness to put yourself on the line against Phoebe Putney. I work here and know it to be a very unethical place. This place has been grossly mismanaged, especially since Kerry Loudermilk has been here. Ed Ollie would have never advocated the type of behavior that he exemplifies. He is without a doubt the worst manager that I've ever worked for. Anyway......enough about him.......you are very much in the process of uncovering his shady dealings.

A couple of points to ponder. Why have we not filed our fiscal year ending 07/31/03 Form 990? I promise, that when we do, it will look much different than the FY02 report. There will be no addresses for Board members on it, for example. Instead of full disclosure, there will be minimal disclosure.....at Kerry's instruction.

Also, why don't you take a look at the Medicare Wage Index for the Albany MSA, composed primarily, of course, of PPMH wages. It's the highest in the state. And there is a reason, and senior management knows it. We have filed fraudulent Medicare Cost Reports and reaped $10's of millions in the last 4-5 years from it.

If you will look at the 990's you'll recognize that they have transferred $10's of millions of investments from PPMH (in the public's eye) to PPHS (not for the public). This was a mere note to the financial statements.

We have been instructed to set our pricing at levels to maximize Medicare outlier payments (see Tenet Health Systems).

You've only begun to peel back the onion. I wish that I could publically support you, but. I need my job!

There are, however, some upper management personnel that recently left our employment that may be willing to talk to you. If you'll do some investigation, you can quickly figure out who recently left the Finance Division.

**EXHIBIT A**

Charles Rehberg
C/o Albany Surgical, PC
401 4th Avenue
Albany GA 31707





JS 44 .(Rev. 4/97)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON PAGE TWO)

| I.(a) PLAINTIFFS | DEFENDANTS |
|---|---|
| United States of America, ex. rel., Charles Rehberg and John Bagnato, M.D. | Phoebe Putney Health Systems, Inc, Phoebe Putney Memorial Hospital, Inc., John Does 1 through 10 |

| **(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF<br>(EXCEPT IN U.S. PLAINTIFF CASES) | COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT<br>(IN U.S. PLAINTIFF CASES ONLY)<br>NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE<br>TRACT OF LAND INVOLVED. |
|---|---|

| **(c)** ATTORNEYS (FIRM NAME  ADDRESS  AND TELEPHONE NUMBER)<br>Bryan A. Vroon, Esq. & John W. Crongeyer, M.D.<br>Vroon & Crongeyer, LLP, 1230 Peachtree Street, Suite 2450,<br>Atlanta, GA 30309   (404) 607-6710 | ATTORNEYS (IF KNOWN) |
|---|---|

## II. BASIS OF JURISDICTION (PLACE AN ✔ IN ONE BOX ONLY)

- ☑ 1  U.S. Government Plaintiff
- ☐ 2  U.S. Government Defendant
- ☐ 3  Federal Question (U.S. Government Not a Party)
- ☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN ✔ IN ONE BOX FOR PLAINTIFF
(For diversity cases only)
AND ONE BOX FOR DEFENDANT)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. ORIGIN (PLACE AN "✔" IN ONE BOX ONLY)

- ☑ 1  Original Proceeding
- ☐ 2  Removed from State Court
- ☐ 3  Remanded from Appellate Court
- ☐ 4  Reinstated or Reopened
- ☐ 5  Transfered from Another district (specify)
- ☐ 6  Multidistrict Litigation
- ☐ 7  Appeal to District Judge from Magistrate Judgment

## V. NATURE OF SUIT (PLACE AN "✔" IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted Student Loans (Excl Veterans)<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholders Suits<br>☐ 190 Other Contract<br>☐ 195 Contract Product Liability | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault Libel & Slander<br>☐ 330 Federal Employers Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liabilty<br>☐ 360 Other Personal Injury | **PERSONAL INJURY**<br>☐ 362 Personal Injury Med Malpractice<br>☐ 365 Personal Injury Product Liability<br>☐ 368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | ☐ 610 Agriculture<br>☐ 620 Other Food & Drug<br>☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 630 Liquor Laws<br>☐ 640 RR & Truck<br>☐ 650 Airline Regs<br>☐ 660 Occupational Safety/Health<br>☐ 690 Other<br>**LABOR**<br>☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt Relations<br>☐ 730 Labor/Mgmt Reporting & Disclosure Act<br>☐ 740 Railway Labor Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl.Ret  inc. Security Act | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br>**PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 840 Trademark<br>**SOCIAL SECURITY**<br>☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g))<br>**FEDERAL TAX SUITS**<br>☐ 870 Taxes (US Plaintiff or Defendant<br>☐ 871 IRS - Third Party 26 USC 7609 | ☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce/ICC Rates/etc.<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and Corrupt Organizations<br>☐ 810 Selective Service<br>☐ 850 Securities/Commodities/Exchange<br>☐ 875 Customer Challenge 12 USC 3410<br>☐ 891 Agricultural Acts<br>☐ 892 Economic Stabilization Act<br>☐ 893 Environmental Matters<br>☐ 894 Energy Allocation Act<br>☐ 895 Freedom of Information Act<br>☐ 900 Appeal of Fee Determination Under Equal Access to Justice<br>☐ 950 Constitutionality of State Statutes<br>☑ 890 Other Statutory Actions |

| REAL PROPERTY | CIVIL RIGHTS | PRISONER PETITIONS |
|---|---|---|
| ☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | ☐ 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights | ☐ 510 Motion to Vacate Sentence<br>**Habeas Corpus:**<br>☐ 530 General<br>☐ 535 Death Penalty<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition |

## VI. CAUSE OF ACTION (CITE THE US CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

*False Claims Act 31. U.S.C. §3729*

| VII. REQUESTED IN COMPLAINT: | ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 | DEMAND $ | ☐ CHECK YES only if demanded in complaint:<br>JURY DEMAND:  ☑ YES   ☐ NO |
|---|---|---|---|

## VIII. RELATED CASE(S) IF ANY

| DATE | SIGNATURE OF ATTORNEY OF RECORD |
|---|---|
| *October 25, 2004* | |